## SWIFT & COMPANY *v.* HOCKING VALLEY RAILWAY COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

No. 376.  Argued December 5, 1916.—Decided March 6, 1917.

A railroad company, under a written agreement reserving a small annual rental and terminable on 30 days' notice, allowed a packing company the use, for warehouse purposes, of land belonging to the railroad and adjacent to one of its sidings, including a switch con-

nected with its main line. The agreement provided that the licensee should not interfere with the tracks of the railroad company, and that the switch track should be at all times under the railroad company's control; also, it reserved to the latter a right to enter at all times "for the purpose of repairing or maintaining the track thereon, or switching or removing cars thereover." The switch track was used by cars moving goods of the licensee in interstate commerce between the warehouse and the main line. *Held*, that under this arrangement the switch track was not to be regarded as a private track, but as a track of the railroad company.

The court cannot be controlled by an agreement of counsel on a subsidiary question of law.

The court cannot decide fictitious cases.

A stipulation of counsel, made only for the purpose of reviewing a judgment rendered on demurrer to the petition, and declaring a proposition which, tested by the petition, is erroneous in fact and in law, will be treated by this court as a nullity.

The fact that effect was given to such a stipulation by the state courts below does not conclude this court.

Where the shipper lets his private cars to the carrier in consideration of mileage charged on both outgoing and return journeys, allowing the carrier to freight them on the return if the shipper does not, and the freight charged upon all goods hauled is the same as for goods hauled in cars owned by the carrier, the cars of the shipper are in the service of the carrier while standing loaded with goods consigned to the shipper on a switch track of the carrier at the shipper's warehouse.

In such case, the "transportation," within the meaning of the Act to Regulate Commerce, has not ended, and demurrage for detention of the cars by their owner may reasonably be exacted by the carrier, in accordance with its rules and rates duly published and filed.

93 Ohio St. 143, affirmed.

THE case is stated in the opinion.

*Mr. M. Hampton Todd* and *Mr. William L. Day* for plaintiff in error.

*Mr. C. M. Horn,* with whom *Mr. James H. Hoyt* was on the briefs, for defendant in error.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

The National Convention of Railway Commissioners, an association comprising the commissioners of the several States, adopted in November, 1909, a Uniform Demurrage Code. Its action was based upon extensive investigations and thorough discussion, participated in by the railroad commissioners, commercial organizations, representatives of railroads and individual shippers from all parts of the country. On December 18, 1909, the Interstate Commerce Commission endorsed the rules so adopted and recommended "that they be made effective on interstate transportation throughout the country." *In re Demurrage Investigation,* 19 I. C. C. 496.

These rules provide that after two days' free time "cars held for or by consignors or consignees for loading" or unloading shall, (with certain exceptions not here material) pay a demurrage charge of $1 per car per day. Private cars are specifically included by the following note:

NOTE.—Private cars while in railroad service, whether on carrier's or private tracks, are subject to these demurrage rules to the same extent as cars of railroad ownership.

(Empty private cars are in railroad service from the time they are placed by the carrier for loading or tendered for loading on the orders of a shipper. Private cars under lading are in railroad service until the lading is removed and cars are regularly released. Cars which belong to an industry performing its own switching service, are in railroad service from the time they are placed by the industry upon designated interchange tracks, and thereby tendered to the carrier for movement. If such cars are subsequently returned empty, they are out of service when withdrawn by the industry from the interchange; if

returned under load, railroad service is not at an end until
the lading is duly removed.)

In 1910 the Hocking Valley Railway Company, an
interstate carrier, inserted in its freight tariff duly filed
and published as required by the Act to Regulate Com-
merce, the demurrage rules and charges, including that
relating to private cars quoted above. Thereafter, Swift
& Company, Chicago meat packers, established on the
line of that railroad at Athens, Ohio, a warehouse to which
it made, from time to time, shipments in private cars.
These cars, which were placed on the switch used in con-
nection with the warehouse, were not unloaded within
the forty-eight hours' free time allowed by the tariff; and
demurrage charges were assessed by the Railway Com-
pany. Payment being refused, this action was brought
in the Court of Common Pleas of Cuyahoga County, Ohio,
to recover the amount. The amended petition alleged,
among other things, that the demurrage rules and charges
had been "approved by the Interstate Commerce Commis-
sion, by a decision rendered by said Commission on the
14th day of November, 1910, in the case of Proctor and
Gamble Company against Cincinnati, Hamilton & Dayton
Railway Company et al., which decision is reported in the
19th volume of the Interstate Commerce Commission
Reports, pages 556 to 560, inclusive thereof, and which
decision, approving said car demurrage rules and charges,
is hereby referred to and made a part hereof, as though
the same were fully written out at length herein."

Swift & Company demurred; and defended on the single
ground that the cars in question were its private cars
standing on its "private track"; contended that the de-
murrage rule which required payment of charges under
such circumstances was an arbitrary imposition; that it
was unlawful and void; and that it was subject to collateral
attack, even though included in a tariff duly filed and
published under the Act to Regulate Commerce. Two

days after the case had been heard on demurrer in the Court of Common Pleas, counsel filed a stipulation as follows:

"For the purpose only of reviewing the judgment of the Common Pleas Court on defendant's demurrer to the amended petition, it is stipulated by the parties hereto that the track on which the cars in question were placed was the private track of Swift and Company."

The next day judgment was rendered for the Railway Company. It was affirmed both by the Court of Appeals of Cuyahoga County and by the Supreme Court of Ohio. 93 Ohio St. 143.

The Supreme Court of Ohio assumed the track in question to be a "private track" as stipulated by the parties, and declared that "demurrage rules relating to private cars employed in interstate commerce and the charges assessable thereunder are matters properly included in the tariff or schedule required to be filed and published. This tariff containing the demurrage rule having been filed and published according to law, was binding alike on carrier and shipper, and so long as it was in force was to be treated as though it were a statute. . . . This rule having been approved by a federal tribunal, acting within the scope of its authority, its decision must be followed by the courts of this state and be given full force and effect."

The case was then brought to this court on writ of error. The errors assigned were, in substance, that the demurrage rule was repugnant to the Act to Regulate Commerce and that the decisions below deprived Swift & Company of its property without the due process of law guaranteed by the Fourteenth Amendment.

Prior to the bringing of this action the Interstate Commerce Commission had held in *Procter & Gamble Co. v. Cincinnati, Hamilton & Dayton Ry. Co.*, 19 I. C. C. 556, that carriers were "within their lawful rights in establish-

ing and maintaining" the above rule for demurrage charges on private cars. The Commerce. Court approved the finding. *Procter & Gamble Co.* v. *United States*, 188 Fed. Rep. 221, 227. An effort to secure a review of these decisions by this court failed. *Procter & Gamble Co.* v. *United States*, 225 U. S. 282.

We do not find it necessary to decide whether the ruling of the Supreme Court of Ohio was correct; or whether the rule concerning demurrage charges on private cars is in all respects valid; or whether a shipper who has delivered private cars to a carrier knowing such rule to be in force is in a position to question its validity in an action for charges accruing thereunder. For the record discloses, contrary to the statement in the stipulation, that the track in question was *not* a "private track."

. The facts which determine the character of the switch and the relation to it of carrier and shipper were carefully set forth in the amended petition and the "License" annexed, copied in the margin.[1] Under it Swift & Com-

---

[1] Exhibit "B."—*License.*—Memorandum of agreement, made this twenty-second day of March, A. D. 1911, by and between the Hocking Valley Railway Company, a corporation existing under the laws of the State of Ohio, hereinafter known as the "Railway Company," party of the first part, and Swift & Company, a corporation whose principal place of business is in Chicago, County of Cook, State of Illinois, hereinafter known as the "Licensee," party of the second part, Witnesseth:

Whereas, the Licensee, at its own request, desires to occupy a tract of ground belonging to the Railway Company at Athens, Ohio, for the purpose of maintaining thereon a warehouse and office in connection with its business at that point, together with all the improvements and appurtenances thereto, in such a manner as not in any way to interfere with the premises, buildings, structures, tracks or business of said Railway Company, upon the following described premises, to wit:

The Northeast part of outlot No. 112 and the Northwest part of outlot No. 113, in the Village of Athens, Ohio, fronting 175 feet on the South side of State Street, immediately West of the premises occupied

pany occupied a part of the Railway Company's premises
for its warehouse and office and enjoyed the rights in the
switch from its main lines.  The "License" recites, among
other things, the Licensee's desire "to occupy a tract of

by the Standard Oil Company, said tract extending Southward from
said street to the North side of the Railway Company's siding, known
as the "Bank Track" as will more clearly appear shaded in yellow on
blue print hereto attached and made a part hereof, for a period of five
(5) years, beginning on the 1st day of November, 1910, at a rental
of Thirty ($30.00) Dollars per annum, payable annually in advance
on the following terms and conditions, to-wit:

First. This agreement shall not be assigned by the Licensee without
the written consent of the Railway Company being first obtained, and in
case the said·Licensee shall permit its interests to be seized or sold under
legal process, this agreement shall thereupon become null and void.

Second. The switch of the Railway Company hereby let and con-
nected with its main line, shall at all times be under control of the Rail-
way Company.

Third. The Railway Company shall have the right at all times to
enter upon the premises hereby let, for the purpose of repairing or
maintaining the track thereon, or switching or removing cars thereover.

Fourth. Either party hereto may terminate this agreement at any
time, after giving to the other party thirty (30) days' notice in writing,
and at or before the termination of said thirty (30) days said Li-
censee shall at its own expense remove all said improvements from said
premises, without causing damage of any kind to the property of the
Railway Company.  Upon its failure to do so within said time the
Railway Company may make such removal at the sole cost of the
Licensee.

Fifth. The Licensee shall pay all taxes assessed upon improvements
upon said premises or said premises by reason thereof and will at all
times hereafter indemnify and save harmless the Railway Company,
its successors and assigns, from and against all loss, costs, charges
and accidents whatsoever, which it may suffer, sustain or in any wise
be subjected to, on account of injuries accruing to its property, or loss
or damage to the property of any other person or corporation, arising
out of, resulting from or in any manner caused by the construction,
erection, maintenance, presence or use of said improvements installed
or existing under this agreement, and said Railway Company shall not
be liable in any way for any loss or damage to said improvements or to
any property belonging to or in the possession or control of said Li-

ground belonging to the Railway Company . . . for the purpose of maintaining thereon a warehouse and office . . . in such a manner as not in any. way to interfere with the . . . tracks . . . of said Railway Company . . . "; that the premises lie on "the North side of the Railway Company's siding, known as the 'Bank Track' . . . "; that "the switch of the Railway Company hereby let and connected with its main line, shall at all times be under control of the Railway Company"; and that "the Railway Company shall have the right at all times to enter upon the premises hereby let, for the purpose of repairing or maintaining the track thereon, or switching, or removing cars thereover." A rental of $30 per annum is provided for; but the license is terminable on 30 days' notice.

These facts were admitted by the demurrer. Upon

censee on or about said premises, resulting from the operation of and use of its railway, engines, cars or machinery, or by reason of fire or sparks therefrom, or any other casualty arising from the use and operation of its railway, and shall be held forever free and harmless by said Licensee from any such liability:

Sixth. The Licensee shall consign all products shipped to it, intended to be placed on the siding hereby let, where the rates and services are equal, via the line or lines of the Railway Company, and shall give said Railway Company the long hauls thereof.

Seventh. The Licensee hereby accepts the License herein made with the above specified terms and conditions, and agrees that any failure or default on its part as to either of the same, may be held and considered a forfeiture and surrender of this License by it.

In Witness Whereof, the parties hereto have caused this instrument to be executed in duplicate, on the day and year first above written.

      THE HOCKING VALLEY RAILROAD COMPANY,
(Signed)    By W. L. MATTOON, *Real Estate Agent.*
      SWIFT & COMPANY,
(Signed)    By L. B. SWIFT.
Witness:
(Signed)    E. OSLER HUGHES.
Witness:
(Signed)    D. E. HARTWELL.

them the case was heard by the Court of Common Pleas; and upon them the case must be decided in this court, unaffected by stipulation of counsel made "for the purpose only of reviewing the judgment of the Common Pleas Court." The construction and effect of a written instrument is a question of law. *Dillon* v. *Barnard,* 21 Wall. 430, 437. Clearly the track in question was not a private track of the shipper but a track of the carrier—like the spur passed upon in *National Refining Co.* v. *St. Louis, I. M. & S. Ry. Co.,* 237 Fed. Rep. 347, affirming 226 Fed. Rep. 357.

If the stipulation is to be treated as an agreement concerning the legal effect of admitted facts, it is obviously inoperative; since the court cannot be controlled by agreement of counsel on a subsidiary question of law.[1] If the stipulation is to be treated as an attempt to agree "for the purpose only of reviewing the judgment" below that what are the facts shall be assumed not to be facts, a moot or fictitious case is presented. "The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property, which are actually controverted in the particular case before it. . . . No stipulation of parties or counsel, whether in the case before the court or in any other case, can enlarge the power, or affect the duty, of the court in this regard." *California* v. *San Pablo & Tulare R. R. Co.,* 149 U. S. 308, 314. See *Mills* v. *Green,* 159 U. S. 651, 654. The fact that effect was given to the stipulation by the appellate courts of Ohio does not conclude this court. See *Tyler* v. *Judges of Court of Registration,* 179 U. S. 405, 410. We treat the stipulation, therefore, as a nullity.

---

[1] *San Francisco Lumber Co.* v. *Bibb,* 139 Cal. 325; *Owen* v. *Herzihoff,* 2 Cal. App. 622; *Aubuchon* v. *Bender,* 44 Mo. 560; *Prescott* v. *Brooks,* 94 N. W. Rep. 88, 94 (N. D.); *Holms* v. *Johnson,* 59 Tenn. 155. See also *Breeze* v. *Haley,* 11 Colo. 351, 362; *Lyon* v. *The Robert Garrett Lumber Co.,* 77 Kans. 823, 827; *Wells* v. *Covenant Mutual Benefit Assn.,* 126 Mo. 630, 639.

Consignors or consignees of freight shipped in private cars pay the same rates for transportation as if the commodities had been shipped in the cars owned by the carriers; but the owners or lessees of private cars are paid or allowed by the carriers (east of the Mississippi River) a sum equal to three-fourths of a cent per mile for refrigerator or tank cars and three-fifths of a cent per mile for other cars. The cars are returned by the railroads to the owners without extra charge. The mileage allowance is paid for the return trip as well as on the journey to destination with load. And if the private car owner does not furnish a load for the return journey the carriers have the right to load the cars. *Re Demurrage Charges on Tank Cars*, 13 I. C. C. 378, 379.

Swift & Company's cars were, therefore, though privately owned, still in railroad service while under lading. The cars while on the switch were on track owned by the Railway Company. The "transportation" within the meaning of the Act to Regulate Commerce had not ended. It cannot be said that a charge for detention of a private car and use of a railroad track under such circumstance is unreasonable. Even before the adoption of the Uniform Demurrage Code such a charge had been upheld by the Interstate Commerce Commission. *Cudahy Packing Co. v. Chicago & Northwestern Ry. Co.*, 12 I. C. C. 446. Defendant's argument was based wholly upon the assumption that the switch was a "private track"; and the propriety of such a charge for cars detained on a public track seems not to have been questioned.

*Affirmed.*

MR. JUSTICE MCKENNA, MR. JUSTICE VAN DEVANTER and MR. JUSTICE MCREYNOLDS dissent.