## J. C. FRANCESCONI & CO. v. BALTIMORE & O. R. CO.

(District Court, S. D. New York. June 1, 1921.)

No. L19-337.

1. **Railroads ⬅139—Liable for unreasonable detention of shipper's tank cars.**

   In the absence of a contrary regulation under the Interstate Commerce Act, a carrier is liable to a shipper for the unreasonable detention and use of the shipper's tank cars for the carrier's own purposes, contrary to the instructions of the shipper.

2. **Railroads ⬅138—Tariff rule held not to authorize unreasonable detention of shipper's cars.**

   A carrier's tariff rule on file with the Interstate Commerce Commission, which required the carrier to pay the shipper three-fourths of a cent a mile for the use of the shipper's cars, which rate was admittedly less than the value of such use, does not authorize the carrier to retain possession of such cars indefinitely, on payment of that rate contrary to the shipper's orders, especially in view of the second section of the rule, which applies to the same transaction and manifests the contrary intention.

3. **Railroads ⬅138—Tariff rule held not to charge owner of tank cars with empty movements under carrier's direction.**

   The provisions of the tariff rules of a carrier, charging the owner of a tank car with the excess of empty mileage, over the loaded mileage, for which the carrier was to pay the shipper a stated allowance for the use of the car, did not intend to charge the shipper with the empty mileage traveled under the carrier's directions contrary to the shipper's instructions and therefore indicates that the provision for mileage paid to the shipper was not intended to authorize the carrier to retain possession of the car indefinitely on payment only of such mileage.

4. **Railroads ⬅138—Carrier's regulation against payment for diversion does not justify indefinite detention.**

   The regulation of a carrier, in its tariffs on file with the Interstate Commerce Commission, that it shall not be liable to a shipper owning its own cars for delay or diversion, except as authorized in filed tariffs, does not give the carrier the right purposely to detain the cars contrary to their owner's orders for the carrier's own purposes.

5. **Customs and usages ⬅6—Uniform conduct essential to establish "practice" of carriers.**

   Though "practice" of the carriers, within Interstate Commerce Act, § 1 (Comp. St. § 8563), covers a large field, such practice is not established by occasional, or even common, assertions of right, but its essence is uniformity, so that the general refusal of a carrier to pay for the use

of privately owned cars detained by it for service other than the owner's does not establish such practice, where it had occasionally paid for such use.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Practice.]

**6. Commerce ⬤═89—Courts can determine applicability of tariff rules in first instance.**

Even though all questions as to rates of an interstate carrier must be presented to the Commission in the first instance, before recourse is had to the courts, the courts can determine whether the tariff rules of the carrier on file apply to the situation in controversy, though such determination involves a construction of the rule.

At Law. Action by J. C. Francesconi & Co. against the Baltimore & Ohio Railroad Company to recover damages for the use and injury by the defendant of two tank cars owned by plaintiff. Verdict directed for plaintiff.

The two tank cars in question were delivered empty to the defendant, with written orders to return them to the shipping point by designated routes. Instead of returning the cars, the defendant placed them in service, carrying acid, between other points, and used them in such service for more than six months, and when they were returned to plaintiff they were so damaged by the acid that the tanks had to be repaired.

Rule 29 of the Interstate Commerce Commission's tariff rules reads as follows:

"Tank Cars of Private Ownership—Obligation to Furnish—Mileage Allowance, and Equalization of Mileage.

"Section 1. In providing ratings in this Classification for articles in tank cars, the carriers whose tariffs are governed by this Classification do not assume any obligation to furnish tank cars. When tank cars are furnished by shippers or owners, mileage at the rate of three-quarters ($\frac{3}{4}$) of one cent per mile will be allowed for the use of such tank cars, loaded or empty, provided the cars are properly equipped. No mileage will be allowed on cars switched at terminals nor for movement of cars under empty freight car tariffs.

"Sec. 2. Private cars will be moved empty, without charge, at the time movement is made between stations or junction points on the lines of carriers whose tariffs are governed by this Classification (either individually or jointly), including delivery to connecting lines, subject to the following conditions:

"(a) Should the aggregate empty mileage of any owner's cars on June 30th of each year, or at the close of such yearly period as may be mutually agreed upon, exceed the aggregate loaded mileage on the lines of such carriers individually (or jointly when mileage accounts are computed jointly), such excess must be paid for by the owner, either by an equivalent loaded mileage during the succeeding six months, or, at tariff rates without minimum, plus the mileage that has been paid by the carriers to the owners on such excess empty mileage. Any excess of loaded mileage over empty mileage of any owner's cars at the end of the accounting period will be continued as a credit against the empty movement of such cars for the ensuing twelve months.

"(b) New cars or newly acquired cars, moved empty to home or loading point by order of the owner, must be billed at regular tariff rates."

Rule 13, formerly rule 14d, provides:

"When private tank cars are unloaded, the owner will issue instructions for empty movement to the agent at point of unloading, either direct or through consignee. The agent will bill each car to final destination, showing name of the consignee and full route."

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Macklin, Brown, Purdy & Van Wyck, of New York City (Walter A. Swett and James M. Gorman, both of New York City, on the brief), for plaintiff.

Cravath & Henderson, of New York City (Lyle H. Hall, of New York City, on the brief), for defendant.

Douglas Campbell, of New York City, appearing by permission of the court for the Union Tank Car Co.

LEARNED HAND, District Judge. [1] In the absence of regulation under the Interstate Commerce Act (24 Stat. 379), there is no dispute that the defendant would be liable. The plaintiff's tender of the cars and its acceptance by the defendant gave the latter no rights beyond the fair import of the transaction, and, taken merely as a custom, the practice of retaining cars at the convenience of the carriers is not sufficiently proved to form a part of the bargain. If so, the proper interpretation of the bailment is that, when the contents of the car have been delivered to the consignee, the car is at the shipper's order.

The defendant's reliance is upon the fact that rule 29 of the Interstate Commerce Commission provides a rate to cover the empty mileage of tank cars, and that by implication this gives to the carrier a right to hold it as long as it suits its necessities in the general handling of its traffic. At first blush the position appears hardy, since it altogether deprives the shipper of his car, and appropriates it as a part of the general equipment of the carrier, at a rate which is concededly but a fraction of its actual use value. Nevertheless, it is quite true that, if the Commission have ruled in the subject-matter, recourse must be had to it, before the courts can interfere, since the question would be one of administration. Pennsylvania R. R. Co. v. Puritan Coal Mining Co., 237 U. S. 121, 35 Sup. Ct. 484, 59 L. Ed. 867.

Nor do I mean to suggest that the Commission might not, if it chose, provide that the tender of a loaded car should give the carrier the right to make it a part of its general equipment, for a time to be determined by its own convenience, at rates which were adequate in the Commission's judgment. That the carrier must, at the cost of paying the full value, at once return the car under the shipper's direction, is not an inevitable necessity. The exigencies of car distribution, the necessities for a reliable and steady supply of equipment, the loss involved in the absolute requirement at once to return empties when and where the shipper might demand, might well give the Commission the power to impose upon the shipper's tender conditions very different from those attending the usual bailment. Similar considerations dictated the decision in Proctor & Gamble v. U. S. (C. C.) 188 Fed. 221, which was reversed on another ground in 225 U. S. 282, 32 Sup. Ct. 761, 56 L. Ed. 1091. See, also, Swift & Co. v. Hocking Valley Ry. Co., 243 U. S. 281, 37 Sup. Ct. 287, 61 L. Ed. 722.

[2] The first question here is whether rule 29 authorizes the indefinite detention of cars at the carrier's pleasure. It is apparent that the rule, in fixing a rate, did not necessarily touch upon this question. At best, if it be an administrative question, which courts should not meddle with, it can be such only because of some established practice

of the carriers, whose prima facie validity courts must recognize. I think that rule 29 does not even leave the matter open.

[3] The defendant's position is that the rate applies to movements made at the carrier's pleasure, as well as the original movement dictated by the shipper. But section 2 charges the shipper with all excess empty movements. If so, it will follow that the allowance of three-fourths of a cent for all movements, loaded or empty, is subject to a deduction for all excess empty movements which the carrier may find it expedient to make. Now, section 2 was certainly not devised upon any such theory, but to impose upon the shipper some motive to reduce his empty haulage. It would clearly frustrate the scheme of the rule if the shipper's compensation, inadequate in itself, were exposed to deductions dependent, not upon his own control, but upon the convenience of the carrier in the use of his property. Nor is it possible to say that section 2 applies only to empty movements directed by the shipper, while section 1 applies both to those and to putative movements directed by the carrier. The rule is clearly one and section 2 is intended to cover the same ground as section 1.

[4] It follows that the rule does not authorize the carriers to detain or divert such cars at their will. The defendant, nevertheless, argues that under a regulation of the American Railway Association, passed May 17, 1911, it is forbidden to make any payment of the kind here sued upon. That rule, which may be taken as a "regulation" under section 1 of the Interstate Commerce Act (Comp. St. § 8563), provides that the carriers will pay nothing for delay or diversion, except as authorized in filed tariffs. That this is not an assertion of any right deliberately to divert such cars appears, not only from rule 29, but from rule 13 of the Car Service Rules, and from the evidence in the case that the practice is to observe the shipper's orders in the return of cars. Such detention remains, therefore, a wrong as much under the regulations and practices of the carriers as at common law, and prima facie it is reserved under section 22 of the Interstate Commerce Act (Comp. St. § 8595), and is a dispute justiciable in court.

[5] The defendant, however, insists that, granting all this, the carriers have nevertheless established a practice by which they have interpreted rule 29 as covering the case of cars which happen to be delayed or diverted, and that this practice must be reviewed by the Commission before it can come before any court. The word "practice," as used in section 1 of the act, covers a large field. Northern Pacific Ry. v. Solum, 247 U. S. 477, 483, 38 Sup. Ct. 550, 62 L. Ed. 1221. But it appears to me open to doubt whether there has been any consistent practice among the carriers on this subject. Certainly the Union Tank Company, a very large owner of cars, has collected damages for diversions in the past from other carriers, and though this defendant appears generally to have refused to recognize any such claims, its own practice is not uniform. On the contrary, it has seized cars from the Union Tank Company and paid sums not calculated upon the rate fixed by rule 29.

Therefore it is fair to say that carriers generally have not, and that this defendant individually has not, "established, observed, and en-

forced" any "regulation or practice" which treats all diversions as falling within rule 29. Occasional, and even common, assertions of right, do not make such a "practice." Its essence is its uniformity. Carriers may not claim the sanction of the statute for a usage which they apply only with exceptions; they cannot say that in such cases they "observe and enforce" it themselves.

[6] In Texas & Pac. Ry. v. Amer. Tie & Timber Co., 234 U. S. 138, 34 Sup. Ct. 885, 58 L. Ed. 1255, it was held that the Commission must first pass upon the question whether railroad ties were within a lumber rate, before the court got jurisdiction over an action for wrongful refusal. If this case means generally that the interpretation of all rules must be fixed first by the Commission, then no case can come up in court involving the meaning of any rule unless the parties agree upon that meaning. In that case the question was of rates, and the case may possibly be taken as deciding that the meaning of rates is always primarily for the Commission. Here, however, is a question whether the rule provides for the involuntary detention of cars; if it does not, that detention was a wrong, and it cannot be argued that there is a rate established for a wrong. The mere fact that the enforcement of a rule of the Commission comes incidentally in question does not divest a court of jurisdiction. The Supreme Court has several times enforced such rules or practices of the carriers without preliminary recourse to the Commission. Pennsylvania R. R. Co. v. Puritan Coal Co., 237 U. S. 121, 35 Sup. Ct. 484, 59 L. Ed. 867; Swift & Co. v. Hocking Valley R. R. Co., 243 U. S. 281, 37 Sup. Ct. 287, 61 L. Ed. 722; Pa. R. Co. v. Kittanning Co., 253 U. S. 319, 40 Sup. Ct. 532, 64 L. Ed. 928. It cannot be that the rule is to be enforced only when its meaning is not in dispute, and in the last case cited there was a careful analysis of the meaning of a rule and a decision as to its application to the case. Texas & Pac. Ry. Co. v. American Tie & Timber Co., supra, must be understood as depending upon the fact that it was a rate which was in question.

The three cases in which the question has already arisen have been decided against the carrier. Gustafson v. Michigan Central R. Co. (Ill.) 129 N. E. 516; Sun Co. v. Pennsylvania Co. (Ct. Com. Pleas Pa., July Term, 1920); Empire Refineries v. Guaranty Trust Co. of New York (C. C. A. 8th, March 17, 1921) 271 Fed. 668.

Verdict directed for the plaintiff for $3,990, with interest from March 1, 1918.