## STRONGIN v. INTERNATIONAL ACCEPTANCE BANK, Inc.

### No. 67.

Circuit Court of Appeals, Second Circuit.
April 2, 1934.

Appleton, Rice & Perrin, of New York City (Walter H. Pollak, T. F. Davies Haines, Gerhard R. Gerhard, and Thomas I. Emerson, all of New York City, of counsel), for defendant-appellant.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Neil P. Cullom, James E. Freehill, and Henry W. Steingarten, all of New York City, of counsel), for plaintiff-appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

Walter Van Bokkelen (hereinafter called Walter) was adjudicated a voluntary bankrupt on May 16, 1930. His trustee in bankruptcy brought this action to recover $75,000 from the defendant bank which is alleged to have been transferred by Walter to the bank on March 17, 1930, when he was insolvent, without consideration and with intent to hinder, delay, and defraud his creditors. The answer contained a denial that Walter made such a transfer and set up as a special defense that the transfers were made in the Argentine, were of property therein situated, but were, neither under the Argentine law nor the American law, of property of Walter. The action was later tried before a jury which rendered a verdict for the trustee for the full amount claimed, with interest. We think that the property transferred was no part of the assets of Walter, and that the motion by the defendant bank for the direction of a verdict in its favor should accordingly have been granted, and that the judgment must therefore be reversed.

From 1914 until his death on February 9, 1929, Libertus Van Bokkelen carried on an exporting and importing business in the Argentine, of which he was a resident, under the name of L. Van Bokkelen. Besides the main office in Buenos Aires, he had various branch offices in New York, San Francisco, and Wenatchee, Wash., and in Montevideo, Uruguay. In the last-named city he conducted business with one Rohr under the firm name of Van Bokkelen & Rohr. In that copartnership he owned a 51 per cent. interest. He left no will, and, by the Argentine law, his property passed on his death one-half to his widow, Laura Van Bokkelen, and one-fourth each to his father and mother. His brother Walter, though not a partner and having no proprietary interest in his business, had long been manager of his New York office, and was liable upon a large amount of the notes of the business.

The defendant International Acceptance Bank, Inc., regularly extended to L. Van Bokkelen, a line of credit of $150,000. In order to make this credit available, the New York office was accustomed to draw drafts on the Buenos Aires office which were discounted by the defendant bank in New York. After discount, these drafts were forwarded to Buenos Aires, accepted there, and paid at maturity. The proceeds were remitted by cable to New York, and the defendant thus became in a position to discount further drafts for L. Van Bokkelen in accordance with the arrangement for credit which had been established.

After the death of L. Van Bokkelen, his father transferred his interest in his son's estate to his mother by bill of sale dated February 28, 1929. On the same date the mother gave a power of disposition over her one-half of the estate to Laura Van Bokkelen, the decedent's widow. On March 7, 1929, Laura, by power of attorney created Thomas F. Hudson and A. Pedro Ciovini Arce her attorneys in fact to carry on the business in the Argentine where it was continued under the name of Sucesion L. Van Bokkelen. In March, Walter went to Buenos Aires and in May told Laura that "he had no authority to go ahead in the business, because there had been nothing left to indicate he could go on with it." He said that "he wanted an assignment in order to sell the business, or dispose of it in any other

way so it would be possible to satisfy the creditors and go on with the business for the benefit of the family." On May 2 Laura gave Walter assignments both of her own and her mother-in-law's interest in the estate and shortly afterwards asked Walter to return them because she had failed to get permission from her mother-in-law to assign the latter's interest. Walter did not return them, but said that "he would sell the business or do the best he could with it," and that "he did not see any way to handle the obligations of the business without selling it," and that "the business could not be sold unless it was completely in his hands." The only consideration he gave to Laura for her assignment was a five-year noninterest-bearing and nonnegotiable note for $100,000 which he told her he gave "as security, as a sort of protection that he would go ahead and do the best he could." Later in May Walter returned to the United States and, on July 18, 1929, obtained from his mother an assignment of her interest in the estate. He gave her no note, but testified that he told her that he would treat her in the same way as he was treating Laura. On August 9, 1929, Laura executed a bill of sale before an Argentine notary purporting to convey the business to Walter for a recited consideration of 50,000 pesos. No part of this consideration nor any part of the $100,000 note was ever paid, nor did either of these items appear in Walter's schedules in bankruptcy. He likewise never paid any part of the promised consideration to his mother, and did not set forth any indebtedness to her in his schedules. Moreover, he never drew anything from the business after receiving the assignments.

A temporary administrator of the estate of Libertus Van Bokkelen in New York was appointed by the surrogate on February 20, 1929. He continued the practice of drawing on the Buenos Aires branch Sucesion L. Van Bokkelen. On September 24, November 6, and November 8, this administrator drew three such drafts of $25,000 each and discounted them with the defendant. Sucesion L. Van Bokkelen accepted them in Buenos Aires, where they were finally, on March 17, 1930, and after several reacceptances by Sucesion L. Van Bokkelen, paid to the defendant. The payments were made in the following manner: On November 1, 1929, Walter sold to a corporation known as L. Van Bokkelen, Inc., the business and assets of the estate of Libertus Van Bokkelen, deceased, which had been assigned to him.

This sale included a 51 per cent. interest in the business of Van Bokkelen & Rohr in Uruguay as well as Sucesion L. Van Bokkelen in the Argentine. As consideration for this sale, he received 49 per cent. of the common stock of the new corporation and $275,998.07 in cash. By instrument dated February 25, 1930, executed by Joseph S. Johnston, attorney in fact for Walter, it was recited that Walter had taken over from Sucesion L. Van Bokkelen the assets and liabilities including specifically the liability for payment of the three drafts above mentioned; that Walter had sold to the corporation L. Van Bokkelen, Inc., the assets, business, and good will of the estate of Libertus Van Bokkelen in consideration for certain stock of such corporation and in further consideration for a cash payment to be made upon delivery to the corporation of his 51 per cent. interest in Van Bokkelen & Rohr; that at the request of Walter the defendant bank had consented to refrain from presenting the said three drafts and had extended the maturity thereof to a time not later than the date on which Walter should become entitled under the agreement of November 1, 1929, to receive payment in cash from the corporation for his interest in Van Bokkelen & Rohr. The instrument went on to assign to the bank all sums due and to become due to Walter from the corporation in payment for 51 per cent. of the business of Van Bokkelen & Rohr and directed the corporation to apply so much of such sums as might be necessary to the payment of the three drafts. This assignment made in February, 1930, to secure the bank was followed by the payment of the drafts on March 17, 1930, by Johnston, attorney in fact for Walter, out of the proceeds of the sale.

On March 11, 1930, Walter, through his attorney Johnston, entered into an agreement with Laura reciting the contract of sale by Walter to the corporation of L. Van Bokkelen, Inc., of the business then being conducted by Sucesion L. Van Bokkelen and of the interest in Van Bokkelen & Rohr. It specifically ratified and confirmed all the acts of Walter and agreed to the transfer by him of all the interest theretofore owned by Libertus Van Bokkelen and by his estate in Van Bokkelen & Rohr, and agreed on behalf of Walter that the proceeds received from the sale of the property in the Argentine and from the interest in Van Bokkelen & Rohr should be held by Walter and used by him "solely to meet the debts and admin-

istration expenses of Libertus Van Bokkelen and of the Estate of Libertus Van Bokkelen, and that any excess over and above such debts and expenses be paid over to the representative of the estate."

The trial judge left to the jury the question whether the transfer to Walter was intended by the parties as a conveyance to him for his own benefit, or whether it was intended only as a conveyance "for the purpose of managing and liquidating the business—Mrs. Laura Van Bokkelen and the parents of Libertus Van Bokkelen retaining the right to the proceeds." The jury answered this question in the affirmative.

 We are satisfied that, under both the New York law and the law of Argentine, the assignment and bill of sale passed no beneficial interest in the business to Walter Van Bokkelen. It is true that Walter in his testimony at the trial denied that he was "just acting as agent for * * * Laura," and stated that he "bought the business" and that his only interest was not that of an agent, and it is shown that he had signed notes for the business along with his brother Libertus aggregating $490,000. Undoubtedly his liability on the notes gave him an interest in the results of the liquidation of the indebtedness of his brother's estate, whether the business was continued as a going concern or was sold, because he naturally wished to see that notes upon which he was liable were paid. But it is quite unreasonable to suppose that there was an outright sale to Walter and that the conveyances by two women apparently without any adviser other than himself (in the case of Laura an assignment of all of her property except some life insurance) are to be taken as transfers of their beneficial interest in the estate. The circumstances we have already set forth militate against such a conclusion. They are principally the absence of any real consideration for the conveyance of a business which was yielding a gross profit of about $450,000 per year that consisted to the extent of about $177,000 of commissions involving little deduction for expenses; the failure of Walter to list in his bankruptcy schedules his 49 per cent. interest in common stock of L. Van Bokkelen, Inc., received for the sale; the definite provisions in the contract of March 11, 1930, that the proceeds of the property should be used to pay the debts and administration expenses of the estate and that the excess should be paid over to the representative of the estate; the ratification of all the acts of Walter, which

was altogether meaningless if the conveyance was intended to make him the absolute owner of the property; last of all the fact that he never withdrew anything from the business for his own use, that drafts continued to be drawn by the administrator of the estate upon the Sucesion L. Van Bokkelen, and that he did not set forth in his bankruptcy schedules an indebtedness which the plaintiff argues was due from him to his mother and sister-in-law. Walter's statement that the $100,000 note "was only an estimate" of Laura's "share in the business," and was not listed in his schedules because he did "not know how much was owing her," is further proof that the instrument of March 11, 1930, in requiring Walter to pay the debts and administration expenses of the estate from the proceeds of the sale and to turn over the balance to the administrator, precisely accorded with Walter's obligation and relation to the Libertus Van Bokkelen estate. It is noteworthy that he exactly complied with this obligation. Any ideas which he had or expressed, as to the effect of the transfer or as to ownership in himself, were of matters of law. They presented no issues of fact for a jury, and could not disturb the inevitable logic of events which show that the transfer was not intended to vest beneficial ownership in Walter Van Bokkelen. Petrogradsky Bank v. National City Bank, 253 N. Y. 23, 170 N. E. 479; Swift & Co. v. Hocking Valley Ry., 243 U. S. 281, 289, 37 S. Ct. 287, 61 L. Ed. 722.

It is said that a conveyance of the legal title to Walter in order to promote convenience in selling or reorganizing the business would, under the equitable doctrines of American law, leave the beneficial ownership still in Laura and her husband's parents. Such equitable estates however are the creations of English courts of chancery and of those courts in the United States which have followed the common law. They cannot arise where the civil law prevails, and trusts in the sense of the English law are unknown. But there is a doctrine of the civil law known as "relative simulation," which is embodied in the Argentine Civil Code and is constantly applied in the Argentine courts. It is invoked by the defendant here and gives rise to a situation analogous in practical effect to that of beneficial ownership in persons who are not vested with the legal title. The Argentine Civil Code thus defines simulation:

252

"Article 989. Simulation occurs when the legal character of an undertaking is concealed under the appearance of another undertaking, * * * or when the undertaking constitutes or transmits rights to third persons for whose benefit such rights are not in reality constituted or transmitted."

"Article 990. Simulation is absolute when a legal undertaking is entered into which is entirely fictitious, and relative when the subterfuge is used to give to an undertaking an appearance which conceals its true character.

"Article 991. Simulation is not forbidden by the law when it prejudices none and has no illegitimate purpose.

"Article 992. When, in a case of relative simulation, a bona fide undertaking, hidden under false appearances, is revealed, the undertaking shall not be avoided provided that no provision of law shall have been violated thereby nor any third person prejudiced."

The expert testimony given at the trial and the decisions of the Argentine courts indicate that "relative simulation" is established in practically the same ways in which the beneficial ownership of Laura and the parents of Libertus Van Bokkelen would be established were the New York law to be applied. Whichever law be followed, the result would be that Walter plainly did not become the real owner of the property transferred but only a conduit employed for convenient administration of the estate. Under the Argentine law the simulation, though for a legal purpose, might be shown by the defendant bank because it was the holder of the accepted drafts of Sucesion L. Van Bokkelen and was clearly prejudiced by a transfer which, if real, had stripped its debtor of all property from which its claim could be satisfied. Plaintiff's contention that fraud must be shown in order to avoid a simulated transfer is quite without warrant. Not only defendant's expert Rives, but plaintiff's own expert Matienzo, testified that the motive did not have to be fraudulent, and the language of article 992 of the Argentine Code seems to bear them out. Prejudice, though the transfer had no illegitimate purpose, would avoid it.

In our opinion, the proof is overwhelming that the transfer to Walter was nothing more than a convenient business arrangement under which Walter acted as an agent for the true owners. The proceeds which he received from the sale to L. Van Bokkelen, Inc., were therefore no part of the assets that his trustee in bankruptcy could claim, but were the property of the estate of Libertus Van Bokkelen. The motion to direct a verdict for the defendant should accordingly have been granted.

But even if we should assume that Walter under the assignments of May or August, 1929, became the owner of Sucesion L. Van Bokkelen, the plaintiff showed neither an actual intent by the bankrupt to defraud creditors, nor a lack of consideration for the transfer. The suit was to set aside a fraudulent conveyance and the case was submitted to the jury upon the theory that there was no actual intent to defraud. The correctness of this is not disputed. The plaintiff, therefore, could only recover if he established that the payment by Walter was without fair consideration. Bankruptcy Act, § 67e, 11 USCA § 107 (e); New York Debtor and Creditor Law (Consol. Laws N. Y. c. 12) §§ 273-275. Payment of an antecedent debt is a fair consideration under both statutes. Coder v. Arts, 213 U. S. 223, 29 S. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008; Van Iderstine v. National Discount Co., 227 U. S. 575, 33 S. Ct. 343, 57 L. Ed. 652; cf. Dean v. Davis, 242 U. S. 438, 37 S. Ct. 130, 61 L. Ed. 419; Halsey v. Winant, 258 N. Y. 512, 180 N. E. 253; New York Debtor and Creditor Law (Consol. Laws N. Y. c. 12) § 272.

We think it clear that Walter was bound to pay the three drafts in question. He so stated in the assignment dated February 25, 1930. Plaintiff's Exhibit 4. Plaintiff's counsel argues that this instrument was concocted by the bank who got him to sign it in order to insure payment of the drafts which it held. But the draft of September 24 was accepted on October 21, 1929, prior to the sale by Walter to L. Van Bokkelen, Inc. It was clearly an obligation of Walter, and its payment on March 17, 1930, discharged an antecedent debt to the bank. The other two drafts of November 6 and November 8 were likewise drawn by the New York administrator of the estate of L. Van Bokkelen on Sucesion L. Van Bokkelen and accepted by Sucesion. While they were accepted after the date when Walter had agreed to transfer the business, they were accepted by Sucesion, which had no relation to the corporation purchasing the assets, and, if Walter is assumed to have become the owner of Sucesion, they must be regard-

ed as his obligations, just as he said they were in Plaintiff's Exhibit 4, and testified at the trial (folios 572, 573). As defendant's counsel argues, they were probably renewals of former drafts. Under the stipulation between the parties, Sucesion L. Van Bokkelen and the temporary administrator in New York after the business was taken over by L. Van Bokkelen, Inc., "confined themselves to the essential collection of accounts receivable and the liquidation of assets payable." This, coupled with Walter's admission of liability in the declaration of February 25, 1930 (Plaintiff's Exhibit 4), and his testimony (folios 572, 573), show that the payment of these drafts was to liquidate antecedent debts for which Walter was liable.

But plaintiff's counsel argues that the stipulation that Walter "personally received no consideration for the payment of any of the drafts" prevented the defendant from contending at the trial that Walter had received any consideration through the discharge of his liability upon the drafts. At the beginning of the trial defendant's counsel perhaps construed this clause of the stipulation as limiting him to the defense that Walter never acquired the ownership of Sucesion L. Van Bokkelen and hence that the payments were not made from his assets. At any rate that was the defense that he said he was going to rely on. But, at the close of the proof when the facts proved had established the further defense that Walter had obtained the discharge of his liability upon the drafts, counsel asked for a different interpretation of the stipulation. In view of the complete contradiction between the stipulation (if the words "personally received no consideration" be taken to cover the discharge of this indebtedness) and the proof that was adduced, we think that the words should be taken to mean only that Walter himself received no property for the payment of the drafts, or, if not so construed, we think that defendant should have been relieved from the stipulation. Plaintiff did not contend that, if the stipulation were so construed, he would have been surprised or deprived of putting in other proof. Whether, therefore, Walter be regarded as having become outright owner of Sucesion L. Van Bokkelen, or only transferee for convenience in administration, the plaintiff made no case for submission to the jury, and a verdict should have been directed for the defendant.

Judgment reversed.