In the Matter of NUNNEMAKER TRANSPORTATION CO., Inc., William P. Grover, Trustee, Appellant,

v.

UNITED CALIFORNIA BANK, Appellee.

No. 24064.

United States Court of Appeals, Ninth Circuit.

Feb. 11, 1972.

Ely, Circuit Judge, dissented in an opinion.

Clayton Rost (argued), of Thoits, Lehman & Hanna, Palo Alto, Cal., Mathews, Traverse & McKittrick, Eureka, Cal., for appellant.

William Holton (argued), John K. Derham, Joseph A. Kiernan, Rodney G. Commons, San Francisco, Cal., for appellee.

Before ELY, WRIGHT and TRASK, Circuit Judges.

TRASK, Circuit Judge:

This is an appeal by the trustee in bankruptcy from a denial, by both the referee and the district court, of a request for a turnover order with respect to $10,-400 paid to Appellee, United California Bank, by an account debtor of the bankrupt within four months immediately prior to the filing of the petition in bankruptcy. This court's jurisdiction is conferred by 11 U.S.C. § 47.

Nunnemaker Transportation Company, Inc. (hereinafter, the bankrupt) had an account with Nilsen Feed Company (Nilsen) for whom it did hauling in the course of its trucking business. On or about February 23, 1967, United California Bank (the bank) made a loan to the bankrupt in the principal sum of $15,000 evidenced by a promissory note executed by the bankrupt and guaranteed by Nilsen on said date. At the same time, to secure repayment of the loan, the bankrupt orally assigned to the bank a security interest in the future payments due on its account with Nilsen to

the extent of $2,600 per month. These arrangements were evidenced by a letter of the same date, executed by all the parties to the transaction, which reads as follows:

"UNITED CALIFORNIA BANK
Eureka Office, 605 Fourth Street
Eureka, California 95502     Tel. 443–6321
February 23, 1967
Mr. Alan Nilsen
Nilsen Company
502 Broadway
Eureka, California 95501
Dear Alan:
In accordance with our credit arrangements with Nunnemaker Transportation Company, you are asked to remit $2,600 per month of the collect freight revenues payable to Nunnemeker [sic] Transportation Company direct to United California Bank, P.O. Box M, Eureka, California.
These funds are to be applied to the Note of this date in the amount of $15,000.00 executed by Nunnemaker Transportation Company, Inc., and guaranteed by Nilsen Company.
Sincerely,
/s/ F. W. Bloomer
F. W. Bloomer
Assistant Manager
FWB/aed
THE ABOVE ARRANGEMENTS ARE IN ACCORDANCE WITH OUR LOAN AGREEMENT OF FEBRUARY 23, 1967.
NUNNEMAKER TRANSPORTATION COMPANY, INC.
By: /s/ Clyde Nunnemaker
Clyde Nunnemaker, President
THE ABOVE ARRANGEMENTS HEREBY ACKNOWLEDGED BY NILSEN COMPANY.
By: /s/ Alan Nilsen
Alan Nilsen
Date: February 23, 1967"

No financing statement with respect to this asserted security interest was filed.

On July 10, 1967, the bankrupt filed its petition in bankruptcy. During the four months preceding the filing of the petition, $10,400 was paid by Nilsen to the bank. The trustee filed a petition with respect to these payments seeking an order to have the bank turn. them over. The referee determined that the payments were not transfers of property for an antecedent debt made within four months preceding the filing of bankruptcy and therefore not a voidable preference under section 60b of the Bankruptcy Act, 11 U.S.C. § 96(b). The district court affirmed the determination of the referee.

The issue before this court is whether the payments made by Nilsen to the bank pursuant to Nunnemaker's order, of moneys otherwise due Nunnemaker, the bankrupt, constituted a voidable preference within the meaning of § 60a and 60b of the Bankruptcy Act.

In DuBay v. Williams, 417 F.2d 1277, 1286 (9th Cir. 1969), we stated that:

"Section 60a(1) of the Bankruptcy Act (11 U.S.C. § 96a(1)) defines a 'preference' as (1) a transfer of any property of the debtor, (2) to or for the benefit of a creditor, (3) for or on account of an antecedent debt, (4) while the debtor is insolvent, (5) within four months of bankruptcy, (6) which enables the creditor to obtain a greater percentage of his debt than some other creditor of the same class. Section 60b permits the trustee to avoid a preference if the creditor had reasonable cause to believe that the debtor was insolvent at the time of the transfer."

In order to avoid the preference, the trustee must succeed in having all the above issues resolved in his favor. 3 Collier on Bankruptcy ¶ 60.02 (14th ed. T. Moore & L. King 1971). Here, only two elements are challenged: (1) whether the payments made by Nilsen to the bank were transfers of property within four months of bankruptcy, and (2) whether the transfers were for or on account of an antecedent debt.

*(1) Transfer Within Four Months.*

Section 60a(2) of the Bankruptcy Act provides that "a transfer of property . . . shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee." This determination requires us to look to state law, DuBay v. Williams, *supra*, at 1287, in this case Division 9 of California's

version of the Uniform Commercial Code (Cal.Com.Code §§ 9101–9507).[1]

Under California law, a lien creditor without knowledge can obtain superior rights over an "unperfected" security interest. Cal.Com.Code § 9301(1) (b).[2] In order for a security interest to become "perfected" the interest must "attach" and, with a few exceptions, a financing statement must be filed. Cal. Com.Code §§ 9303(1), 9302(1). However, before discussing these elements of perfection, there is a threshold question as to whether the asserted security is an enforceable one.

### (a) *The Security Agreement.*

At the outset the trustee claims that the bank was not in the position of a secured party as to the future payments due on the account which the bankrupt had with Nilsen because there was no "security agreement" between the bank and the bankrupt. We disagree.

Under the applicable California law, "a security interest is not enforceable against the debtor or third parties unless . . . the debtor has signed a *security agreement* which contains a description of the collateral. . . ." (Emphasis supplied). Cal.Com.Code § 9203 (1) (b). A "security agreement" is defined as "an agreement which creates or provides for a security interest." Cal. Com.Code § 9105(1) (h).[3] Thus, in order for the bank to stand in the position of a secured party there must be a written agreement signed by the debtor which creates or provides for a security interest and which contains a description of the collateral.

The district court held that the effect of the bankrupt's signed acknowledgment of the existence of a prior oral agreement was to make the letter a sufficient memorandum of a security agreement to satisfy the statute of frauds requirement of that section.

It is to be noted that both the oral loan agreement and the written letter agreement were entered into the same day and are each a part of one entire transaction. The letter of February 23, 1967, identifies the evidence of debt as a promissory note "of this date in the amount of $15,000.00" (the obligation secured); it states that it was executed by Nunnemaker Transportation Company, Inc., and guaranteed by Nilsen Company (identifies the debtor); it directs Nilsen Company to remit $2,600 per month to the bank "of the collect freight revenues payable to Nunnemaker Transportation Company" from Nilsen (the collateral); finally, it states that the funds are to be "applied to the Note" (attached to the collateral). The letter states that "the above arrangements are in accordance with our loan agreement of February 23, 1967," thus establishing that it is not a gratuitous arrangement but a formal agreement, and it is signed by officers of the debtor, the lender-creditor, and the third-party debtor whose payments due to the bankrupt constitute the collateral which was assigned to the lender-creditor.

The letter agreement does contain all of the necessary requirements of a "security agreement," notwithstanding the district court's opinion that it does not "comply literally" with Section 9203 (1) (b). Appellant relies upon Needle v.

---

1. Division 9 applies "[t]o any transaction (regardless of its form) which is intended to create a security interest in personal property including . . . general intangibles, . . . accounts or contract rights." Cal.Com.Code § 9102(1) (a).

   The section numbering under the California version of the Code is identical to that of the Official Code except that the dash following the article (division in California) has been eliminated in California.

2. "Lien creditor," since 1967, has been expressly defined in Section 9301(3), as it is in the Official Code, to include the trustee in bankruptcy.

3. Section 1201(37) defines a "security interest":

   " 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation."

Lasco Industries, Inc., 10 Cal.App.3d 1105, 89 Cal.Rptr. 593 (1970), wherein the court held that a financing statement signed by the debtor and containing a description of the collateral of the secured party was not sufficient as a "security agreement" within the meaning of Section 9105(1)(h) because there was nothing in the statement constituting a "grant" of a security interest. The financing statement was informational only to advise creditors whether, and to what extent, the debtor may have encumbered his assets. Here, on the contrary, the letter not only contains the information, but states that the arrangements detailed therein "are in accordance with our loan agreement." *Needle* further suggests that the financing statement and the security agreement may be in the same document. They are here.

### (b) *Perfection of the Security Interest.*

Having determined that there was a security agreement and that it was adequate to create a security interest in the bank in the collateral offered as security, we return to an examination of the question whether that security interest has become "perfected." Only if it has been, can it be deemed to have been transferred to the bank so that it may remain superior to that claimed by the trustee under Section 60a(2) of the Bankruptcy Act.

"Perfection" for this purpose as defined in Cal.Com.Code § 9303(1) is accomplished when the security interest has "attached" and when (with significant exceptions later to be noted) a financing statement has been filed. "Attach" is used simply to indicate the point in time when the security interest in favor of the bank as the secured party is created in the debtor's property consisting of payments due from Nilsen. In order to determine whether the security interest has "attached" we look to Cal. Com.Code § 9204(1). It provides that in order for the security interest to "attach" there must be (a) a security agree-

ment; (b) for value given; and, (c) the debtor has rights in that collateral. We have already examined the sufficiency of the security agreement. That agreement recites that the consideration for the agreement is a loan in the sum of $15,000 evidenced by a note "of this date" executed by Nunnemaker Transportation Company, Inc., and guaranteed by Nilsen Company. There is thus no question but that value was given by the bank. The last requirement for the security interest to attach is that the debtor has rights in the collateral, i. e., that Nunnemaker has rights in "collect freight revenues" payable to it from Nilsen Company. Unfortunately, neither appellant nor appellee have enlightened the court with respect to the exact nature of the arrangement between Nunnemaker and Nilsen. The trustee in a memorandum below refers to the arrangement only as one for earnings from "an expectancy of future dealings." C.T. 28. On the other hand, the referee in his findings states:

"4. That the bankrupt assigned to United California Bank a portion of the proceeds of its contract with Nilsen in the sum of $2,600 per month." C.T. 11.

This finding has not been attacked by the trustee in the briefs or argument before this court. Cal.Com.Code § 9204 (2) does not define what "rights in the collateral" may be, but it does give examples of situations where the debtor has none. One of those examples is that a debtor has no rights "in a contract right until the contract has been made." Cal.Com.Code § 9204(2)(c). Assuming that finding number four of the referee is correct, which we do in the absence of convincing contrary evidence, there was a contract and it was in existence on February 23, 1967. Thus the debtor did have rights in the collateral on that date which he could transfer. This distinguishes the present case from DuBay v. Williams, *supra*, as to the Davis claim. There it was urged that an agreement and formal assignment could create a security interest in future accounts re-

ceivable. That court, however, pointed out that the agreement could not "be squared" with an intent to make a present transfer of future account balances. Davis was required from time to time "to select" accounts receivable. 417 F.2d at 1285. Thus, these would have to be the subject of future assignments which were not made. Not so here. The terms of the agreement are consistent with the referee's finding of a *contract* which was in existence, a portion of the proceeds of which were then assigned.

The other element required for a security interest to be perfected is that a financing statement be filed. California, however, has a unique exception in its statutory version of the Uniform Commercial Code which makes it unnecessary to file a financing statement to perfect a security interest in "general intangibles." [4] The Official Comment states:

"The term 'general intangibles' brings under this Article miscellaneous types of contractual rights and other personal property which are used or may become customarily used as commercial security. Examples are goodwill, literary rights and rights to performance. Other examples are copyrights, trade-marks and patents. . . ."

Although the record before us gives little information as to the exact nature of the collateral, both appellant and appellee and the district court here are in agreement that the future payments due to the bankrupt from the Nilsen Company are "general intangibles." The appellant in its reply brief stated:

"We believe that the District Court was right in characterizing the transaction involved in this case as a security interest in general intangibles."

The Cal.Com.Code § 9302(1) (g) also provides that "as between bona fide assignees for value without notice of the same general intangible consisting of any right to payment," the assignee first giving notice to the third party debtor in writing, shall have priority. The bank did this. It notified Nilsen Company in the letter that Nunnemaker had assigned its interest in the "collect freight revenues" due to it from Nilsen, to the bank to secure payment of a $15,000 note. As a result, as the district court pointed out,

---

4. Section 9302(1) (g) of the California Commercial Code provides:

"(1) A financing statement must be filed to perfect all security interests except the following:

\* \* \* \* \*

"(g) A security interest in general intangibles; provided, however, that as between bona fide assignees for value without notice of the same general intangible consisting of *any right to payment*, the assignee first giving notice thereof to the account debtor in writing shall have priority, but the assignment of such general intangible shall not be of itself notice to the account debtor so as to invalidate any payments made by him to the transferor." (Emphasis supplied).

The term "general intangibles" includes some rights to payment of money as well as the patents, copyrights, literary property rights, and other nonmonetary rights for which it was intended. Concoff, "Motion Picture Secured Transactions Under the Uniform Commercial Code: Problems in Perfection," 13 U.C.L.A. L.Rev. 1214, 1225 (1966); Coogan, "Intangibles as Collateral Under the Uniform Commercial Code," 77 Harv.L.Rev. 997, 999–1001 (1964); Kripke, "Suggestions for Clarifying Article 9: Intangibles, Proceeds, and Priorities," 41 N.Y.U.L.Rev. 687, 692 (1966). The Official Comment to U.C.C. § 9–106, amended in 1966, now points this out:

"However, in some special cases a contract right to receive money crystallizes not into an account but into a general intangible, for in such cases it is a right to payment of money that is not 'for goods sold or leased or for services rendered.' Examples of such rights are the right to receive payment of a loan not evidenced by an instrument or chattel paper; a right to receive partial refund or purchase prices paid by reason of retroactive volume discounts; rights to receive payment under licenses of patents and copyrights, exhibition contracts, etc." Uniform Commercial Code § 9–106, Comment.

This exception to the filing requirements for "general intangibles" provided by Cal.Com.Code § 9302(1) (g) is unique to California's version of the Uniform Commercial Code.

no subsequent lien obtained by a judgment creditor could have become superior to the lien of the bank.

The security agreement had been entered into, it was sufficient under the circumstances here to create a security interest and that security interest had been perfected. Filing was unnecessary under the Cal.Com.Code provisions but notice had been given by the bank as assignee to the account debtor, Nilsen of the bank's priority as required by Cal. Com.Code § 9302(1) (g). There was, therefore, a transfer within the provisions of Section 60a(2) of the Bankruptcy Act which occurred on February 23, 1967, more than four months prior to the filing of the voluntary petition in bankruptcy on July 10, 1967.

■ Appellant, while conceding that no filing was required under state law, argues that a financing statement was required to be filed in order to comply with the general policy implicit in the Bankruptcy Act against secret liens. Thus, he contends that the exemption contained in the Cal.Com.Code § 9302 for filing a financing statement concerning general intangibles is void because of the policy expressed in Section 60 of the Bankruptcy Act.

Appellee correctly points to the language of 60a(2) of the Bankruptcy Act which states that:

"2. For the purposes of subdivisions (a) and (b) of this section, a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee."

■ On the basis of this section appellee contends that because no filing is required by State law, the transfer was complete when the security agreement was signed by all parties.

The language of Section 60a(2) was the result of an amendment of Section 60 of the Bankruptcy Act in 1950. The policy of the Act to eliminate all types of secret liens and transfers was well recognized even when Section 60 had been previously amended in 1938.[5]

The 1950 amendment was the result in large measure of the impact on accounts receivable financing of the decision of the Supreme Court in Corn Exchange National Bank & Trust Co. v. Klauder, Trustee in Bankruptcy, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884 (1943). In that case the bank had taken an assignment of accounts receivable for a present consideration. The bank had not notified the persons whose accounts had been assigned to it. Under Pennsylvania law such notice was necessary to protect the assignee of accounts against a subsequent good faith assignee of the same accounts, who did give notice. Section 60a(2) of the Bankruptcy Act as then written required perfection of a transfer to the extent that *no bona fide purchaser* could thereafter acquire rights superior to the assignee. The trustee in bankruptcy was held to have superior rights to those of the bank. The significance of that case to the present one is that the 1938 and the 1950 amendments both make clear that the notice requirements sufficient to perfect a transfer were to be measured by applicable state law.[6]

The fact that no public filing or recording was required in Pennsylvania under the *Corn Exchange Bank* facts did not cause concern that the policy against "secret liens" was being violated or would render the simple requirement of notice to the account debtor, void. With regard to the notice requirement in that case, the Court said:

"The borrower does not wish his customers to learn of his borrowing arrangement for the reason, among others, that customers, particularly in placing orders for future delivery, pre-

5. 3 Collier on Bankruptcy ¶ 60.38 at 941 (14th ed. J. Moore & L. King 1971).

6. 318 U.S. at 436, 63 S.Ct. 679, 87 L.Ed. 884; DuBay v. Williams, 417 F.2d 1277, 1287 (9th Cir. 1969).

fer to rely on solvent suppliers. And often the borrower desires to conceal the fact that he is being financed by this method lest knowledge lead to a withdrawal of further credit or refusal of new credit. The borrower and the lender on assigned accounts receivable thus have a mutual interest in not making the transaction known. So long as the transaction may remain a secret, it is not apt to become known to the trade. *When the transaction is communicated to the trade debtors it is known where there is less motive to keep it under cover.* Commercial and trade reporting agencies are diligent to obtain credit information of this character." 318 U.S. at 440, 63 S.Ct. at 683. (Footnote omitted) (Emphasis supplied.) [7]

We, therefore, hold that Cal.Com.Code § 9302 is not void because it is in conflict with Section 60 of the Bankruptcy Act.

### (2) *Transfer on Account of an Antecedent Debt.*

One of the issues before the referee was the contention of the trustee that the transfer was for an antecedent debt. The referee found otherwise.[8] Although the district court did not reach the issue, the parties discussed it in their briefs and argued the question. We, therefore, reach it now.

The bank argues that this was a transfer for a new and contemporaneous consideration and its security interest is protected in any event under the provisions of Section 60a(1) of the Bankruptcy Act and Section 9108 of the California Commercial Code. The Act specifically provides that a preference will result only when a transfer of property is made by the debtor "for or on account of an antecedent debt." Section 9108 provides:

"Where a secured party makes an advance, incurs an obligation, releases a perfected security interest, or otherwise gives new value which is to be secured in whole or in part by after-acquired property his security interest in the afteracquired collateral *shall be deemed to be taken for new value and not as security for an antecedent debt* if the debtor acquires his rights in such collateral either in the ordinary course of his business or under a contract of purchase made pursuant to the security agreement within a reasonable time after new value is given." (Emphasis supplied).

The trustee, on the other hand, contends that Section 9108 is in conflict with the paramount provisions of Section 60 of the Bankruptcy Act and must fall.

The literature on this point is voluminous.[9] The commentators, however, are divided. Some believe that Section 9–108 of the Uniform Commercial Code attempts to offer a definition of antecedent debt that is distinctly contrary to that previously used by the courts in construing Section 60a of the Bankruptcy Act. Since federal law is controlling,

---

7. Related to the present case the "communication to the trade debtors" would refer to the necessity of notice by the bank to the Nilsen Feed Company. Such notice was clearly given here because the bank's letter of February 23, 1967, concerning the credit arrangements was addressed to Nilsen and the Nilsen Company signed it by way of acknowledgment.

8. Finding of Fact number six:
   "6. That said assignment was for new consideration paid to Nunnemaker Transportation Co., Inc. at the time of, or immediately following, said execution of the February 23rd promissory note and concurrently with the execution and

acknowledgment of the assignment of the proceeds of the contract between the bankrupt and Nilsen Co.
   "CONCLUSIONS OF LAW
   "1. That by virtue of the payment of new money at the time of, and in consideration of the execution of the assignment of the proceeds of the contract, United California Bank did not receive a preference." C.T. 11.

9. For a substantial bibliography on this point and related questions involving the Uniform Commercial Code and the preference provisions of the Bankruptcy Act, see DuBay v. Williams, 417 F.2d 1277, 1280 n. 2 (9th Cir. 1969).

those writers are of the opinion that Section 9–108 fails in achieving its aim. 3 Collier on Bankruptcy ¶ 60.51A[7.2] (14th ed. J. Moore & L. King 1971); King, "Section 9–108 of the Uniform Commercial Code: Does it Insulate the Security Interest from Attack by a Trustee in Bankruptcy?" 114 U.Pa.L.Rev. 1117, 1124–29 (1966).

Other writers find no necessary conflict between the Code and the Bankruptcy Act because the risk of a secret lien in after-acquired accounts and inventory which might turn into a midnight attachment on the eve of bankruptcy is considered minimal under Section 9–108. *See* Hogan, "Games Lawyers Play with the Bankruptcy Preference Challenge to Accounts and Inventory Financing," 53 Cornell L.Rev. 553, 569 (1968); Note, "Rosenberg v. Rudnick: An Examination of the Potential Conflict Between the After-Acquired Property Provisions of Article 9 of the U.C.C. and Section 60(a) of the Bankruptcy Act," 15 U.C.L.A. L.Rev. 678, 690 (1968). Moreover, as Hogan, *supra,* points out:

> "The acceptance of the Uniform Commercial Code by forty-nine states and by Congress for the District of Columbia strongly suggests that section 9–108 does not license conduct that the country regards as immoral or commercially unacceptable. On the contrary, even in those states where the Code was scrupulously scrutinized, section 9–108 was left untouched." 53 Cornell L.Rev. at 573.

In the only two reported decisions brought to this court's attention, In re Portland Newspaper Publishing Co., 271 F.Supp. 395, 400 (D.Ore.1967), aff'd sub nom. DuBay v. Williams, 417 F.2d 1277 (9th Cir. 1969); and Rosenberg v. Rudnick, 262 F.Supp. 635, 639 (D. Mass.1967), both of which were expressly relied upon by the district court below, the wide acceptance of Section 9–108 by the various states was the primary justification for the respective district court

determinations that it did not conflict with Section 60a of the Bankruptcy Act.[10] However, it must be noted that in each case there was present a factor that does not exist in the case at hand— a factor apparently presumed by those commentators who find no risk of a secret lien: compliance with the notice filing provisions of the Uniform Commercial Code.

We have already seen, however, that Section 60a(2) of the Bankruptcy Act was enacted with complete awareness of the policy against secret liens and would protect the assignee bank here. The same argument against Section 9–108 here based upon a secret lien policy would produce the same result. If the transfer is valid according to state law without a requirement for public filing, then public filing is not required here either. It is not required by its express terms; it is not required by any federal policy on these facts.

■ The second argument made by appellant is that only the payments due the bankrupt on the contract with Nilsen at the date of the assignment may be secured and paid; and that future payments must be considered as paid as of date of actual payment as of which time they are for an antecedent debt.

Although this court in DuBay v. Williams, *supra,* did not reach this question, the court below passed upon it. In Re Portland Newspaper Publishing Co., 271 F.Supp. 395, 400 (D.Ore.1967), held that payments received after the basic security agreement was entered upon, were not preferences and no conflict with Section 60a(1) of the Bankruptcy Act existed. We agree.

Under Section 9302(g) of the California Commercial Code a financing statement need not be filed to perfect a "security interest in general intangibles; provided, however, that as between bona fide assignees for value without notice of the same general intangible consist-

---

10. *See also,* Grain Merchants of Ind. v. Union Bank & Savings Co., 408 F.2d 209, 219 (7th Cir.) (dictum), cert. denied,

France v. Union Bank & Savings Co., 396 U.S. 827, 90 S.Ct. 75, 24 L.Ed.2d 78 (1969).

ing of any right to payment, the assignee first giving notice thereof to the account debtor in writing shall have priority. . . . ." This was done by the bank on February 23, 1967, and its security interest thus perfected as against other lien creditors. That being so, the bank's assignment "shall be deemed" to be made at the date of transfer, or on February 23, 1967.

The judgment of the district court is affirmed.

ELY, Circuit Judge (dissenting):

I respectfully dissent. As I interpret the majority opinion, it is based primarily upon tacit acceptance of the appellant's acquiescence in the District Court's *legal* conclusion that the Bank's security interest was in "general intangibles," and thus could be perfected without filing a financing statement. Unlike my Brothers, I adhere to the established principle that "the court cannot be controlled by agreement of counsel on a subsidiary question of law." Swift & Co. v. Hocking Valley Ry. Co., 243 U.S. 281, 289, 37 S.Ct. 287, 290, 61 L.Ed. 722 (1917). *See also*, Estate of Sanford v. Commissioner of Internal Revenue, 308 U.S. 39, 51, 60 S.Ct. 51, 84 L.Ed. 20 (1939). In my view, therefore, the majority's discussion amounts to nothing more than an advisory opinion.

As the majority recognizes, the payments due Nunnemaker from Nilsen were attributable to hauling services rendered by Nunnemaker. The Official Code Comment, quoted in footnote four of the majority opinion, leads me to believe that the district judge erred in categorizing the collateral as "general intangibles." It is only "in some *special* cases" that "a contract right to receive money crystallizes not into an account but into a general intangible, for in such cases it is a right to payment of money that is *not* '. . . for services rendered.'" Uniform Commercial Code § 9–106, Comment (emphasis added). The effect of correctly categorizing the collateral as an "account" is that perfection could be achieved only by complying with the Code's filing requirements. *See* Cal. Com.Code § 9302(1).

The Bank did not file a financing statement; therefore, its interest was not perfected within the four-month period. In this type of case, section 60a(2) of the Bankruptcy Act provides that the transfer "shall be deemed to have been made immediately before the filing of the petition." I would hold, contrary to the majority's conclusion, that the transfer was thus accomplished within the four-month period.

There remains the issue concerning the effect of Cal.Com.Code § 9108, the antecedent debt provision. I agree with the majority that there was a "security agreement" which elevated the Bank to the status of a "secured party." Furthermore, section 9108, by its terms, would afford its protection to a "secured party," without imposing any requirement that the party "perfect" his security interest. Hence, under California law, the transfer, even though deemed made immediately before the filing of the petition, would not be on account of an antecedent debt. Under section 60a of the Bankruptcy Act, however, the transfer immediately before filing the petition was on account of the antecedent debt, i. e., the loan of February 23. The majority, in concluding that there is no conflict between the state and federal statutes, relies heavily on its belief, which I think mistaken, that the Bank had perfected its security interest. As I have previously shown, that interest had not been perfected. I therefore see a conflict between the Bankruptcy Act's policy against secret liens and the California Code's relation-back approach, and the conflict should, of course, be resolved in favor of the federal enactment. Elliott v. Bumb, 356 F.2d 749, 755 (9th Cir. 1966).

I would reverse.