WALTER E. HELLER AND COMPANY, INC., ET AL.
*v.* GEORGE SALERNO ET AL.

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued December 4, 1974—decision released March 18, 1975

*Frank J. Dumark,* for the appellants (defendants).

*H. William Shure,* for the appellees (plaintiffs).

BOGDANSKI, J.  This action was brought by Walter E. Heller and Company, Inc., and First National Bank of Boston (both hereinafter referred to as Heller) against George Salerno, a deputy sheriff for New Haven County, and Seth W. Darley, tax collector for the town of Branford.  Heller originally sought to restrain the defendants from interfering with its possession of certain personal property at the Branford manufacturing plant of MIF Industries, Inc., a Delaware corporation.  The defendants, by cross complaint, sought to restrain Heller from interfering with their attempt to levy an alias tax warrant on the personal property of MIF Industries, Inc.  By agreement of the parties, the court authorized Heller to sell the tangible personal property of MIF Industries, Inc., and deposit the proceeds with the clerk of the Superior Court.  Heller then filed a substituted complaint seeking an adjudication of the validity and priority of the respective claims to the proceeds of the sale.  The trial court found the issues for Heller on its substituted complaint and on the cross complaint, and ordered the proceeds paid over to Heller.  From that judgment, the defendants appealed to this court, assigning error in the court's findings, in the court's conclusions, and in the overruling of their claims of law.

The finding[1] discloses the following facts:  On September 30, 1968, MIF Industries, Inc., a Connecticut corporation (hereinafter MIF-Connecticut)

---

[1] The defendants have briefed only two of their assigned errors in the court's finding of facts.  Those findings have not been corrected since they will not affect the result.  *Anderson* v. *Pension & Retirement Board,* 167 Conn. 352, 353 n.1, 355 A.2d 283; *Lewis*

borrowed $3,675,000 from Heller. MIF-Connecticut executed and delivered notes to Heller and, to secure the loans, gave Heller security interests in all of its personal property, then owned or thereafter acquired. Those security agreements provided that they would be binding upon the successors and assigns of MIF-Connecticut. On October 1, 1968, Heller filed financing statements (Form UCC-1) with the secretary of the state, describing the personal property subject to the security agreements.

On September 16, 1969, MIF-Connecticut and two other corporations merged into and became MIF Industries, Inc., a corporation organized under the laws of Delaware (hereinafter MIF-Delaware). All parties to the merger agreed that the security agreements between Heller and MIF-Connecticut would continue to be effective against the personal property of MIF-Delaware. That understanding was set forth in the parties' "Plan and Agreement of Merger" annexed to the "Certificate of Merger" which was filed with the secretary of the state.[2]

---

v. *Lewis,* 162 Conn. 476, 481, 294 A.2d 637. The remaining claimed errors in the finding of facts have not been briefed and are considered abandoned. *Gentry* v. *Warden,* 167 Conn. 639, 640, 356 A.2d 902; *Pappas* v. *Pappas,* 164 Conn. 242, 243, 320 A.2d 809.

[2] The "Plan and Agreement of Merger" also provided as follows:

"The Surviving Corporation shall be responsible and liable for all of the liabilities and obligations of each of the Constituent Corporations; . . . and neither the rights of creditors nor any liens upon the property of any of the Constituent Corporations shall be impaired by the Merger." Art. III, ¶ 3.

"All corporate acts, plans, policies, contracts, approvals and authorizations of the Connecticut Corporations and Canaan, their respective shareholders, board of directors, officers and agents which were valid and effective immediately prior to the effective date of the Merger shall be taken for all purposes as the acts, plans, policies, contracts, approvals and authorizations of the Surviving Corporation and shall be effective and binding thereon as the same were with respect to the Connecticut Corporations and Canaan." Art. III, ¶ 6.

Heller consented to the merger by a letter agreement dated September 16, 1969. That letter agreement provided that MIF-Delaware "does hereby assume the performance of and agrees to perform all of the terms, covenants, conditions, obligations, duties, liabilities and warranties on the part of MIF [Connecticut] . . . to be performed pursuant to the . . . Collateral Installment Note, Security Instruments and other documentation, all dated September 30, 1968."

After the merger, MIF-Delaware defaulted in its obligations under the notes and security agreements with Heller. On July 13, 1971, with the written consent of MIF-Delaware, Heller took possession of all the personal property of MIF-Delaware at its plant in Branford. That property included $400,000 worth of inventory, some of which had been acquired by MIF-Delaware after the merger, but all of which had emanated from the premerger assets of MIF-Connecticut. On the next day, July 14, 1971, Salerno, pursuant to an alias tax warrant issued by Darley, made demand for delinquent personal property taxes which MIF-Delaware owed to the town of Branford. When Salerno was refused payment, he attempted to take possession of the personal property of MIF-Delaware.

The trial court concluded that Heller had valid security interests in all the personal property of MIF-Connecticut prior to the merger; that MIF-Delaware assumed all of MIF-Connecticut's obligations under the security agreements after the merger; that by statute and by contract the security interests of Heller in the after-acquired inventory of MIF-Delaware remained unimpaired; that it was not necessary to file a new financing statement after the merger to perfect the security interests of Heller

in the property acquired after the merger since those security interests were again perfected on July 13, 1971, when Heller took possession of the personal property of MIF-Delaware; that those security interests were perfected prior to the execution of the alias tax warrant by Salerno on July 14, 1971; and that the entire fund deposited with the clerk of Superior Court should be paid over to Heller.

The defendants contend that the security agreements of September 30, 1968, could not extend to any assets acquired or produced after the merger in the absence of a new security agreement, and that the court's conclusion that Heller had perfected security interests in the after-acquired inventory of MIF-Delaware is meaningless if no security interest ever existed in that new property.

The present dispute concerns $400,000 worth of MIF-Delaware inventory, a portion of which was acquired after the merger. The initial question is whether Heller had an enforceable security interest in that inventory. A " '[s]ecurity interest' means an interest in personal property or fixtures which secures payment or performance of an obligation." General Statutes § 42a-1-201 (37). A security interest, however, cannot be enforced against the debtor and third parties unless the collateral is in the possession of the secured party or the debtor has signed a security agreement which contains a description of the collateral. General Statutes § 42a-9-203 (1). A " 'security agreement' means an agreement which creates or provides for a security interest." General Statutes § 42a-9-105 (h). " 'Agreement' means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or

usage of trade or course of performance as provided in sections 42a-1-205 and 42a-2-208." General Statutes § 42a-1-201 (3).

In this case, MIF-Connecticut borrowed $3,675,000 from Heller. The obligation to repay the loan was evidenced by the notes executed by MIF-Connecticut and the performance of that obligation was secured by the security agreements. Thus Heller had security interests in the collateral described in the security agreements with MIF-Connecticut. That collateral included all inventory "owned or thereafter acquired" by MIF-Connecticut. A security interest in after-acquired property, or the so-called "floating lien," is expressly sanctioned by General Statutes § 42a-9-204 (3). Whether the security interest in after-acquired inventory continued after the merger is readily ascertainable. All parties to the merger expressly agreed that the security interests of Heller would continue to be enforceable against the assets of the surviving corporation, MIF-Delaware. The "Plan and Agreement of Merger" provided that MIF-Delaware would be responsible not only for the liabilities of the constituent corporations, but also for their obligations and contracts.[3] Furthermore, by letter agreement with Heller, MIF-Delaware assumed the performance of all duties and obligations of MIF-Connecticut with respect to the security agreement.

The requirements of § 42a-9-203 (1) (b) for a "signed" security agreement were met in this case by the execution of the MIF-Connecticut security agreement, the subsequent "Plan and Agreement of Merger," and the letter agreement wherein MIF-Delaware expressly assumed the security agreement

[3] See footnote 2.

obligations of MIF-Connecticut. That a security agreement may be established through several writings signed by the same or different debtors is undisputed. See *Nunnemaker Transportation Co.* v. *United California Bank,* 456 F.2d 28, 31 (9th Cir.); *In re Wambach,* 343 F. Sup. 73, 75 (N.D. Ill.), aff'd, sub nom. *Wambach* v. *Randall,* 484 F.2d 572 (7th Cir.). The trial court correctly concluded that MIF-Delaware gave Heller a security interest in its after-acquired inventory and that that security interest was enforceable against MIF-Delaware and third parties.[4]

Whether that security interest in the inventory of MIF-Delaware remained perfected by the pre-merger filing of the financing statements on October 1, 1968, is not at issue. The trial court found that Heller took possession of the collateral on July 13, 1971. "A security interest in . . . goods . . . may be perfected by the secured party's taking possession of the collateral." General Statutes § 42a-9-305. The definition of "goods" includes "inventory." General Statutes § 42a-9-109. Therefore, when the defendants attempted to levy on the inventory of MIF-Delaware on July 14, 1971, their rights were subordinate to those of Heller, who had perfected its security interest in that inventory on the previous day. See General Statutes §§ 42a-9-201 and 42a-9-301 (1) (b).

There is no error.

In this opinion the other judges concurred.

[4] See also General Statutes § 33-369 (d); Del. Code Ann. tit. 8-9, § 8-259 (a) (Sup. 1968). While those statutes require a surviving corporation to be responsible for all "liabilities" and "obligations" or "duties" of the merging corporations, we need not decide, under the facts of this case, whether those statutes alone require the same result.