## In re LAVERTY DETECTIVE BUREAU, INC., Bankrupt.

**Jules V. SPECINER, Trustee, Plaintiff,**

v.

**AMERICAN NATIONAL BANK & TRUST OF NEW JERSEY, Assignee of Princeton American Credit Corp., Defendant.**

Nos. 78 C 360, 74 B 1064.

United States District Court,
E. D. New York.

Dec. 5, 1978.

Jules V. Speciner, Great Neck, N. Y., for plaintiff.

Eichler & Forgosh, Irvington, N. J., for defendant.

## MEMORANDUM AND ORDER

GEORGE C. PRATT, District Judge:

The Trustee in bankruptcy of Laverty Detective Bureau, Inc. (Laverty), commenced an adversary proceeding in the Bankruptcy Court against defendants American National Bank & Trust of New Jersey (American), assignee of Princeton American Credit Corp. (Princeton), seeking to recover an alleged preferential transfer pursuant to § 60(a) of the Bankruptcy Act, 11 U.S.C. § 96(a). The Trustee appeals from an order dated December 5, 1977 based on a decision of Bankruptcy Judge Rudin, dated November 18, 1977, which granted American's motion for summary judgment and dismissed the complaint for failure to state a legal claim. The issues on appeal concern the interaction of the preference provisions of the Bankruptcy Act and the provisions of Article 9 of the Uniform Commercial Code relating to security interests in accounts receivable.

The essential facts are not in dispute. Laverty was a security guard company providing services to customers and receiving payments which were generally delayed from 30 to 90 days after invoices were sent. In order to overcome a cash flow problem resulting from the delays in payment, Laverty entered into an accounts receivable financing arrangement with Princeton on August 1, 1972. Under the arrangement, Princeton agreed to lend money to Laverty, secured by an agreement pledging Laverty's accounts receivable for repayment of the loans. The agreement covered all future or after-acquired accounts receivable in addition to those accounts then existing. Such an arrangement is a common method of commercial financing, which permits businesses to utilize their accounts receivable to finance their continuing operations.

Laverty executed a financing statement describing the accounts receivable financing agreement with Princeton, and duly filed the statement with the Secretary of the State of New York on August 11, 1972. This served as compliance with the filing requirements for perfection of a security interest under U.C.C. § 9–302. Subsequently, on February 4, 1974, Princeton assigned the security agreement and financing statement to American.

American learned of Laverty's financial difficulties on or prior to July 12, 1974, and thereupon made no further advances to Laverty under the accounts receivable financing agreement. On July 12, 1974, Laverty assigned to American new accounts receivable aggregating $46,363.21, against which American made a final cash advance of $1,700. Laverty continued to assign new accounts receivable to American without any further advances until August 8, 1974, totaling $177,245.03. Laverty subsequently filed its voluntary petition in bankruptcy on August 21, 1974, and was adjudicated bankrupt on that date. Deducting admitted credits in the amount of $32,547.39, the net amount of the preferential transfers claimed by the Trustee to have been made

within the four months preceding bankruptcy totals $144,697.64.

The Trustee filed a complaint to recover the payments or transfers made by Laverty to American during the four months preceding the filing of the bankruptcy petition. The complaint alleged that such payments or transfers constituted voidable preferences under § 60(a) of the Bankruptcy Act, 11 U.S.C. § 96(a). American subsequently moved for summary judgment. In his decision, Judge Rudin correctly noted that the issues raised here have been considered in several other jurisdictions. See *In re Nunnemaker Transportation Co., Grover v. United California Bank*, 456 F.2d 28 (CA9 1972); *In re King-Porter Company, Inc., Mills Morris Company v. Scanlon*, 446 F.2d 722 (CA5, 1971); *Owen v. McKesson and Robbins Drug Company*, 349 F.Supp. 1327 (N.D.Fla.1972); *In re Grain Merchants of Indiana, Inc., France v. Union Bank & Savings Company*, 286 F.Supp. 597 (N.D.Ind. 1968) *aff'd.* 408 F.2d 209 (CA7 1969) *cert. den.* 396 U.S. 827, 90 S.Ct. 75, 24 L.Ed.2d 78 (1969); *In re Portland Newspaper Publishing Co.*, 271 F.Supp. 395 (D.Ore.1967), *aff'd. sub nom. Dubay v. Williams*, 417 F.2d 1277 (CA9 1969); *Rosenberg v. Rudnick*, 262 F.Supp. 635 (D.Mass.1967).

Relying on the "unit" or "entity" theory of accounts receivable financing adopted in the cases cited *supra*, Judge Rudin granted American's motion, holding that the transfer of accounts receivable occurs, for purposes of § 60(a) of the Bankruptcy Act, when the security agreement on such accounts is properly recorded, even though some of the accounts receivable are not even in existence at the time of the recording. Judge Rudin noted that:

> * * * in this case, although certain accounts receivable were generated within four months prior to bankruptcy and therefore could not have been, as individual accounts, made a subject of security until then, or transferred until then, yet all of the accounts together, as a "stream of commerce" constitute an entity subject to the properly recorded security device, and immune, because recorded (transfer-

red) more than four months prior to bankruptcy, from attack as a preference. Decision of November 18, 1977, at 5–6.

Judge Rudin also rejected the Trustee's argument that § 60 of the Bankruptcy Act should prevail over U.C.C. § 9–108, which the *King-Porter* and *Rosenberg* cases, *supra*, have held to protect the interests of a secured creditor by deeming a transfer occurring within the four months preceding bankruptcy to have been taken for new value rather than on account of an antecedent debt. The Trustee filed a timely notice of appeal to this court from the decision of Judge Rudin.

The appeal thus raises two novel issues in this circuit. The first involves whether the assignment of accounts receivable made pursuant to a security agreement, executed and filed prior to the four months preceding bankruptcy, constitutes a voidable preference as to those accounts which first came into existence during the four month period. Resolution of this issue turns on whether the "transfer" of the accounts receivable is viewed as having occurred upon execution and filing of the security agreement or upon each of the accounts coming into existence. If the former, there was no voidable preference because the filing of the agreement, i. e. the "transfer", occurred prior to the four month period. If the latter, there would be a voidable preference provided that the second issue were to be resolved in the trustee's favor. The second issue involves a determination of whether the transfers effected pursuant to the security agreement were made for and on account of an antecedent debt.

Section 60(a)(1) of the Bankruptcy Act, 11 U.S.C. § 96(a)(1), defines a "preference" as:

> * * * a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of the creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable

such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

In the next paragraph, the statute further provides that

a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee. 11 U.S.C. § 96(a)(2).

The Trustee contends that transfer of Laverty's accounts receivable coming into existence subsequent to July 12, 1974, constituted preferential transfers because the transfer could only occur, as a matter of law, when Laverty acquired rights in the assets; that under the Bankruptcy Act, the transfer does not occur until the security interest is perfected; that applicable state law determines such perfection; and that under New York law, UCC § 9–303(1) states, *inter alia*, that "[a] security interest is perfected when it has attached * *." At the time of Judge Rudin's decision, UCC § 9–204(1) provided that "a security interest cannot attach until there is agreement that it attach and value is given and the *debtor has rights in the collateral.*" (emph. supp.)*

The Trustee errs, however, in seeking too much "perfection". The issue is whether there was a transfer under § 60 of the Bankruptcy Act, and the construction of that Act "is a matter of federal law". *In re Grain Merchants of Indiana, supra,* 286 F.Supp. at 605.

* * * § 60(a)(2) does not make the test one of when the state law may denominate a security interest as perfected. The specific test of § 60(a)(2) is one of when under state law the security inter-

est, however described, becomes one which cannot be defeated by a subsequent lien obtainable in proceedings on a simple contract action. Perfection under state law need not be full perfection but only perfection *so far* as is necessary to meet the test of § 60(a)(2). *Rosenberg v. Rudnick, supra,* at 638. (Emph. in original).

\* \* \* \* \* \*

Congress did not state that a "transfer" occurs when a security interest attaches or when state law says a conveyance has been made. Congress provided that a transfer is "deemed" to have been made when it became "so far perfected" that no subsequent lien creditor could achieve priority. 'Transfer' for the purpose of § 60(a)(2) is thus equated with the act by which priority over later creditors is achieved and not with the event which attaches the security interest to a specific account.

We look to state law, therefore, only to decide the point at which [the creditor's] claim to the future accounts was sufficiently asserted to prevent a subsequent lien creditor from achieving priority over it in those accounts. That time was the date upon which [the creditor] filed its financing statement. *Dubay v. Williams, supra,* 417 F.2d at 1287–88.

It is undisputed that the financing statement here was filed long before the four month period preceding bankruptcy. That filing perfected American's security interest as far as was necessary to achieve priority over later creditors; it is also deemed to be the "transfer" of Laverty's after-acquired accounts receivable, including those which came into existence within the four month period. *See e. g., In re Nunnemaker, supra,* at 34–35; *In re King-Porter, supra,* at 730–31; *Dubay v. Williams, supra* at 1287–88; *In re Grain Merchants, supra,* 408

---

* Effective July 2, 1978, § 9–204 was amended, and the provisions relating to the time when a security interest attaches were omitted from that section and rewritten into § 9–203. Subdivision 1 of § 9–203 now provides, *inter alia,* that a security interest does not attach unless the collateral is in the possession of the secured party, *or* the debtor has signed a security agreement containing a description of the collateral. Under new § 9–203, it is clear that attachment, and hence perfection, may now occur at the time that the security agreement is entered into by the parties, and duly filed or recorded.

F.2d at 212–215. Since the "transfer" of the accounts receivable here, for purposes of § 60(a), occurred long before the four month period, there was no voidable preference and the Trustee's complaint was properly dismissed.

In view of the foregoing it is unnecessary to determine the second issue raised on this appeal, whether the transfers were "for and on account of an antecedent debt".

Accordingly, the Bankruptcy Court's order of December 5, 1977 is affirmed.

SO ORDERED.