In the Matter of R & S MACHINE COMPANY, Debtor.

FORD MOTOR CREDIT COMPANY, Movant,

v.

R & S MACHINE COMPANY, Respondent.

Bankruptcy No. 2–87–00018.
Motion No. 2–87–0120M.

United States Bankruptcy Court,
D. Connecticut.

Sept. 14, 1987.

George M. Purtill and James M. Tancredi, Day, Berry & Howard, Hartford, Conn., for movant.

Martin W. Hoffman, Hartford, Conn., for debtor-respondent.

## MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

Before the court is the motion of Ford Motor Credit Company (FMCC) for relief from the automatic stay imposed by § 362(a) of the Bankruptcy Reform Act of 1978 (Code). FMCC seeks modification of the stay in order to enforce its alleged rights under a security agreement covering a Ford automobile registered in the name of R & S Machine Company, the debtor in possession (debtor). The debtor opposes the motion on the sole ground that FMCC does not hold an enforceable security interest. It does not dispute FMCC's proof that FMCC's debt exceeds the automobile's value and that adequate protection is lacking. The parties established the following facts at evidentiary hearings held on June 25 and July 17, 1987.

### II.

The debtor operates a machine shop business and filed a chapter 11 petition on January 9, 1987. Edward LeBorious is the debtor's president and sole stockholder. The peculiar circumstances surrounding the purchase and financing of the automobile from Enfield Ford, Inc. (the dealer) are at the center of the dispute in this proceeding.

On September 9, 1985, LeBorious went to the dealer's place of business to purchase, on behalf of the debtor, an automobile for use in the debtor's business. The automobile selected by LeBorious had a sales price of $15,644.75. LeBorious sought to have the dealer accept a deposit of $1,000.00 and finance the balance. The dealer customarily assigned its chattel paper to FMCC after getting pre-approval of loans. The dealer suggested, and LeBorious agreed, that the loan application be made in the name of LeBorious personally and that he take title to the vehicle. The loan application was approved on September 11, 1985 for $13,500.00, and on that date the dealer prepared a bill of sale, a retail installment contract (security agreement), an agreement to purchase insurance, and an application to the Connecticut Motor Vehicle Department (MVD) for registration of a motor vehicle, all showing LeBorious as the purchaser and loan obligor. LeBorious signed all documents requiring his signature. The registration application listed FMCC as the first lienholder, the dealer having executed an assignment of the security agreement to FMCC. The bill of sale to LeBorious disclosed the dealer's receipt of $2,000.00 cash, monies which, LeBorious testified, came from the debtor.

A problem arose later that day with obtaining car insurance in LeBorious's name. The dealer and LeBorious then decided to register the automobile in the name of the debtor. The dealer prepared, and LeBorious signed, a second registration application showing the debtor as the owner or registrant. The dealer allowed LeBorious to take possession of the vehicle overnight, pending the filing of the second registration application with the MVD. LeBorious returned on September 12, 1985 and received license plates and a copy of the filed registration application, showing the debtor as the owner. He re-executed no other papers. At some point, the dealer sent FMCC the security agreement, the agreement to purchase insurance, the original,

but not the second, registration application and the bill of sale.

On June 21, 1986, the MVD issued FMCC a Certificate of Title for the vehicle, showing the debtor as the owner and FMCC as the first lienholder. FMCC, apparently, made no note of the fact that the papers in its file described LeBorious, not the debtor, as the owner.

The debtor used the automobile in its business and made the monthly payments on the obligation to FMCC until the date of the filing of its bankruptcy petition. The debtor's original bankruptcy schedules did not show the automobile as an asset. After the conclusion of the instant hearing, the debtor amended its asset schedules to include the vehicle.

Only LeBorious testified as to essentially all of the foregoing circumstances, and no employee of the dealer appeared to offer any other explanation of how the various documents surrounding the sale and financing were drawn up. A representative of FMCC testified that FMCC was unaware of the second registration application until after the bankruptcy filing.

### III.

The debtor does not argue that there was inadequate perfection of FMCC's security interest in the automobile under the Connecticut version of the Uniform Motor Vehicle Certificate of Title and Anti-Theft Act, Conn.Gen.Stat. §§ 14–165 to 211 (1987). The debtor contends that FMCC does not hold a valid security interest "because the Debtor did not sign the Security Agreement and the person who did sign the Security Agreement did not have any rights in the collateral". *Debtor's Memorandum* at 4. *See* Conn.Gen.Stat. § 42a–9–203(1) (1987); *cf. The Connecticut Bank and Trust Co. v. Schindelman (In re Bosson)*, 432 F.Supp. 1013 (D.Conn. 1977).

### IV.

I conclude the debtor's arguments are meritless. There is no question that the public filing for the purchase and financing of the Ford automobile accurately describe this transaction. The debtor was, in fact, the owner of the automobile; it used the vehicle in its business; all cash monies paid on account of the purchase came from the debtor; and it intended that FMCC have a lien to cover the amount borrowed. Testimony from LeBorious clearly establishes that he intended that the entire transaction be a corporate transaction. This record supports a finding that although it did not sign the security agreement, the debtor ratified LeBorious's execution of the security agreement as the debtor's own action. *Cf. Walter E. Heller & Co. v. Salerno*, 168 Conn. 152, 159, 362 A.2d 904 (1975) ("a security agreement may be established through several writings signed by the same or different debtors ..."); *GMAC v. Lefevre (In re Lefevre)*, 27 B.R. 40, 42–43 (Bankr.D.Vt.) (Husband executed security agreement regarding automobile, but husband and wife executed application for registration as co-owners, listing the lienholder. Held: Wife estopped from denying security interest or perfection), *aff'd*, 38 B.R. 980 (D.Vt.1983); *In re Eton Furniture Co.*, 286 F.2d 93, 96 (3rd Cir.1961) (Debtor's employee borrowed money from bank as individual for debtor's actual use; debtor never signed loan documents. Held: Debtor ratified transaction by using loan proceeds, and bank allowed to setoff loan against debtor's bank account).

Alternatively, I find that when, on September 11, 1985, all transfer and financing papers were originally signed by LeBorious and the dealer, LeBorious became the unrecorded owner of the Ford automobile. His execution of the security agreement created an enforceable security interest because, as the owner, he had rights in the collateral. Conn.Gen.Stat. § 42a–9–203(1) (1987). When, later the same day, LeBorious signed the second registration application placing title in the name of the debtor, he, in effect, transferred the title subject to the lien of FMCC. *See* Conn.Gen.Stat. § 42a–9–306(2) (1987); *cf. Hartford Nat'l Bank & Trust Co. v. Essex Yacht Sales, Inc.*, 4 Conn.App. 58, 492 A.2d 230 *cert. dismissed*, 197 Conn. 801, 495 A.2d 281 (1985).

### V.

The motion for relief from stay to allow FMCC to exercise its rights under a retail installment contract dated September 11, 1985 concerning a 1985 Ford LTD automobile, ID No. VIN2FABP42F0FX122290 is granted. It is

SO ORDERED.